LOUIS M. BUBALA III, ESQ.
Nevada State Bar #8974
ARMSTRONG TEASDALE LLP
50 West Liberty, Suite 950
Reno, NV 89501
Telephone: 775.322.7400
Facsimile: 775.322.9049
Email: lbubala@armstrongteasdale.com

Counsel for Sheelagh Dawn Biggs

ELECTRONICALLY FILED ON
March 2, 2012

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>JOEL P. BIGGS,<br><br>    Debtor. | Case No.: BK-10-54412-GWZ<br>Chapter: 13<br><br>**OBJECTION TO AMENDED PLAN AND JOINDER IN OBJECTION OF CHAPTER 13 TRUSTEE, WITH CERTIFICATE OF SERVICE**<br><br>Hearing Date: March 16, 2012<br>Hearing Time: 2:00 p.m. |

    Creditor Sheelagh Dawn Biggs ("Ms. Biggs") objects to Debtor's [4th] amended plan (Ct. Dkt. #86, filed Feb. 15, 2012) on the grounds that (1) the plan has not been proposed in good faith, 11 U.S.C. § 1325(a)(3); (2) the action of the debtor in filing the petition was not in good faith, 11 U.S.C. § 1325(a)(7); and (3) the plan is not in the best interests of creditors, 11 U.S.C. § 1325(a)(6).

## I. OBJECTION TO NEW PLAN

    The previous plan was not proposed in good faith due to the *de mininis* payments to Ms. Biggs, debtor's former wife and virtually his only creditor (Ct. Dkt. #76, Order). The Court also should deny confirmation to the new plan because it does not improve her treatment. The following section highlights the deficiencies in the new plan. Ms. Biggs also asserts many of her prior objections (Ct. Dkt. #64-65, Objection and Decl. of Appraiser R. Sunn), which are restated below.

    Debtor only has two unsecured, non-priority creditors, Ms. Biggs for $115,214.35 and a credit card bill from Discover for $2,536.06 (Ct. Dkt. #41, Order on Ms. Biggs' Claim; Cl. Reg. #3, Ms. Biggs' Claim; Cl. Reg. #1, Discover's Claim). The original plan proposed to pay the unsecured creditors $6,953.44, providing a dividend of just 5.9 cents on the dollar (Ct. Dkt. #55, ¶ 2.20, General

1

1  non-priority unsecured claims).  Ms. Biggs would receive $6,797.65 over the next five years if debtor
2  completed the plan payments.

3         The new plan increases payments to just 8.6 cents on the dollar, with $10,220.44 to unsecured
4  creditors (Ct. Dkt. #86, ¶ 2.20, General non-priority unsecured claims).  Ms. Biggs would receive a
5  total of $10,023.65 over five years under the new plan.  The plan still pays her a pittance of what she
6  is owed, less than 10 percent of his debt to her.  The plan should not be confirmed since the petition
7  and plan are filed in bad faith to avoid paying his debts owed to his former spouse.  The plan also is
8  not in the best interest of creditors—namely, Ms. Biggs, since he owes almost all his debt to her.

9         Debtor proposed to increase his payments to unsecured creditors by only $3,422.79.  Yet
10 Debtor no longer proposes to make any payments on his second home in Paradise, California
11 (Compare ¶ 2.11, Secured claims in 4th Am. Plan, Ct. Dkt. #86 with 2d Am. Plan, Ct. Dkt. #55).  In
12 Debtor's prior plan, he sought to keep that secured debt current with a monthly payment of $320 (Ct.
13 Dkt. #55 at ¶ 2.11).  Thus, Debtor's prior plan provided $19,200.00 in payments on the secured debt
14 over the life of the five-year plan.  Debtor's new plan no longer pays this secured claim.  While he
15 wipes away almost $20,000 in payments from his prior plan, his new plan increases his payments to
16 unsecured creditors less than $3,500.  Again, the petition and plan are not filed in good faith, and the
17 plan is not in the best interest of creditors.

18        Debtor is left paying four creditors (1) Chase, with the secured debt on his residence, which is
19 not under water; (2) the Australian Child Support Division, a priority creditor because Debtor is
20 delinquent on his child support payments owed to Ms. Biggs as she raises their child; (3) Ms. Biggs,
21 for the debts arising from their previous marriage and subject to a judgment against Debtor; and (4) a
22 $2,500 credit card bill.  He proposes a plan that, if completed, will discharge virtually all the debt he
23 owes Ms. Biggs.  The sole purpose of the petition is to discharge his debts to her, a filing that is not
24 in good faith.  *See, e.g., In re Silberkraus*, 253 B.R. 890, 904-05 (Bankr. C.D. Cal. 2000), *citing In re*
25 *Chinichian*, 784 F.2d 1440 (9th Cir. 1986).

26        Moreover, the only reason Debtor possibly can discharge the debt is because he filed a
27 Chapter 13 petition and his debts to her dischargeable.  11 U.S.C. § 1328(a)(2).  He would not
28 receive this discharge if this was a Chapter 7 case since this Court has held the debt arises from a

property settlement (Ct. Dkt. #41, Order on Ms. Biggs' Claim). 11 U.S.C. § 523(a)(15). The absence of any significant creditors, save Ms. Biggs, is evidence that this case should not proceed under Chapter 13. If Debtor wants to discharge his credit card debt, his case should be converted to Chapter 7.

## II.  RENEWED OBJECTIONS

As discussed in Ms. Biggs' prior objection (Ct. Dkt. #64), confirmation should be denied because Debtor's plan provides almost nothing to Ms. Biggs. This plan is nothing more than Debtor's attempt to avoid his obligations owed to his former wife. Ms. Biggs has been in and out of court for the past six years, fighting to protect her rights against Debtor. Now Debtor has dragged her into bankruptcy court to discharge his obligation to her at pennies on the dollar. But the record shows that this is nothing more than a two-party dispute. Debtor has almost no other debts. Yet he files a plan that nearly wipes out his debts owed to Ms. Biggs. Under the totality of the circumstances, Debtor filed his petition and plan in bad faith. His plan also is not in the best interest of Ms. Biggs, his primary creditor. Debtor's plan should be denied confirmation.

## III.  PRE-BANKRUPTCY HISTORY

This prepetition procedural history provides important insights in to Debtor's pattern and practice in trying to avoid his obligations to Ms. Biggs.

Debtor and Ms. Biggs were divorced in Nowra Court in Australia on October 9, 2005 (Ct. Dkt. #24, J. Biggs Decl. at ¶3). The divorce was not amicable, and the Australian court prohibited Debtor from any contact with their child after February 17, 2006 (Cl. Reg. #3). Debtor later initiated additional litigation against Ms. Biggs with the Federal Magistrates Court of Australia. *Id.* That court dismissed Debtor's action, and ordered him to pay $3,000 in costs incurred by Ms. Biggs and $1,650 in costs incurred for an independent children's lawyer representing their son's interests. *Id.*

Notwithstanding court orders and obligations, Debtor was approximately $14,000 behind in child support payments (Cl. Reg. #4-2). Ms. Biggs has pursued the collection of these funds in the Third Judicial District Court, where Debtor resides. *Biggs v. Biggs*, Case No. CI17233. Following court hearings, Debtor agreed that the funds would be paid from his proceeds arising from the sale of

3

1  their Marital Property, discussed below (Ct. Dkt. #64, Exhibit 1, Order and Judgment Confirming
2  Master's Findings, dated Dec. 21, 2006, recorded with Lyon County).
3        Concurrent with the divorce in Australia, Debtor brought an action against Ms. Biggs in
4  Nevada over their marital property.  The case was originally filed in the Third Judicial District Court
5  in Yerington, and later transferred to the Second Judicial District Court in Reno (*Biggs v. Biggs*, Case
6  No. DV05-02431, State Court Docket Sheet, filed as Exhibit 2 to Ct. Dkt. #35, Resp. to Claim Obj.).
7  The state court approved a settlement agreement that stated that "the Marital Residence shall be
8  immediately listed for sale" (Stip. & Order, Nov. 11, 2006, at Ex. A, Pg. 3, Para. D, attached as Ex. 2
9  to Ct. Dkt. #24, J. Biggs Decl.).
10       Notwithstanding the order, Debtor took the house off the market and alleged that Ms. Biggs
11 failed to disclose certain assets.  Ms. Biggs in turned moved to compel Debtor put their former
12 Marital Residence back on the market.  The Second Judicial District Court held Debtor in contempt
13 because he did not comply with his obligations to list the Marital Residence for sale (Order to
14 Enforce Agreement of the Parties and Order of Contempt, May 18, 2010, attached as Ex. 3 to Ct.
15 Dkt. #24, J. Biggs Decl.).  Judge Peck found that Debtor unilaterally removed the Marital Residence
16 from the market for more than a year. *Id.* at 2-4.  She went on:

> Once the Marital Residence was returned to the market, the evidence
> shows that [Debtor] did nothing to sell the property.  The 'For Sale'
> sign is almost entirely hidden by foliage in the front yard.  The
> landscaping in the front yard has been permitted to become overgrown
> and unkempt.  In addition, the photos of the interior of the home which
> are available on-line present the home as messy, and do nothing to
> make the home attractive to prospective buyers.  Simply put, the Court
> believes that while Plaintiff may have complied with the letter of the
> Court's Order after November 21, 2008, he sought to thwart the intent.

*Id.* at 4:8-16.  The Court granted Ms. Biggs' motion to put the Marital Residence back on the market.

      Judge Peck found that Debtor "treated the Marital Residence as his own without any regard to the obligation to sell and to Defendant's significant disadvantage." *Id.* at 6:12-14.  The Court held that relisting the property alone was an inadequate remedy because it simply preserved the status quo at Ms. Biggs' expense. *Id.* at 6:14-16.  As a result, the Court awarded Ms. Biggs "a judgment in an amount equal to the equity to which she would have been entitled in 2007 had the Marital Residence

remained on the market." *Id.* at 6:24-26. The Court calculated the equity in the Martial Residence when Debtor took the property off the market and awarded her a judgment based on the half the equity at that time in the amount of $78,450.00. *Id.* at 7:8-18. The judgment bears interest until paid in full. *Id.* at 7:19-22.

To protect Ms. Biggs, Judge Peck ordered her to "execute a quit claim deed to the Marital Residence which shall be placed in trust with her counsel. When the Judgment has been paid in full, Defendant's counsel may release the quit claim deed to Plaintiff." *Id.* at 7:22-24. The property has not been sold (Ct. Dkt. #1, Sch. A) and remains community property (Ct. Dkt. #58, Trans. at 11:1-4). Judge Peck later awarded Ms. Biggs her fees and costs, including $2,340.00 for having Ms. Biggs travel back to Nevada because Debtor would not allow her to participate telephonically (Cl. Reg. #3).

Six months later, Debtor filed his bankruptcy petition. Ms. Biggs lives in Australia with her son. She does not have the resources to defend her interests in bankruptcy court, and undersigned counsel is representing her pro bono.

## IV. DEBTOR'S BANKRUPTCY

A review of Debtor's papers shows that he did not file his petition or plan in good faith, and that the plan is not in the best interest of his creditors.

**A. Almost all of Debtor's non-mortgage debt is owed to Ms. Biggs**

Debtor treats Ms. Biggs' claim as unsecured under the amended plan since it does not treat her as a secured creditor (Ct. Dkt. #86).

As discussed above, Debtor has only two unsecured, nonpriority creditors seeking payment through this case. Debtor also scheduled unsecured claims by another credit card and the law firm that represented Debtor in state court over his dispute with Ms. Biggs. Neither filed claims and will not be paid in this Chapter 12 case. Fed. R. Bankr. P. 3002.

Between Ms. Biggs and Discover, Ms. Biggs is owed 97.84 percent of the debt. Debtor's sole purpose in filing this case and plan is to cram-down his debts owed to her.

**B. Debtor does not obtain any relief regarding the former Marital Residence**

Debtor valued his residence (and their former marital residence) at $120,000, and asserted that Chase is owed $120,222 (Ct. Dkt. #1, Sch. A & D). The claim filed by Chase is for $119,366.48

1  (Cl. Reg. #5). Whether the residence is technically underwater, Debtor is not obtaining any relief
2  through the bankruptcy. The bankruptcy filing fee of $274 exceeds any strip down. The case and
3  plan were not filed to deal with the debt owed on Debtor's residence.

**C. Debtor should use the second home to pay Ms. Biggs' claim**

In Debtor's prior plan, he provided for payments on a second residence with equity while making *de minimis* payments to Ms. Biggs. In the new plan, he is no longer making payments on the property. Upon information and belief, Ms. Biggs believes that Mr. Biggs' sister is making the payments since she lives there and owns the property with him. However, that leaves the equity in the property in the estate for Mr. Biggs' benefit over the long term, and providing no value to Ms. Biggs or the other unsecured creditor. The failure to do so should be a basis to deny confirmation.

Debtor scheduled a secured creditor, Green Tree Servicing, with a $24,000 claim against Debtor's mobile home in Paradise, California (Ct. Dkt. #1, Sch. D; *see* Cl. Reg. #2, Green Tree claim for $22,371.98). Debtor schedules the mobile home as valued at $5,000 (Ct. Dkt. #1, Sch. A) or $10,000 (Ct. Dkt. #1, Sch. D). Ms. Biggs asserts this valuation is wrong, and Debtor has not complied with his obligation to complete his schedules accurately. 11 U.S.C. § 521(a)(1)(B)(i). "The obligation is strict and the law requires such schedules to be as complete and accurate as possible. The burden is on the debtors to complete their schedules accurately." *In re Park*, 246 B.R. 837, 842 (Bankr. E.D. Tex. 2000) (citing cases); *see also Lubeck v. Littlefield's Rest. Corp. (In re Fauchier)*, 71 B.R. 212, 215 (BAP 9th Cir. 1987) ("The burden is on the debtors to use reasonable diligence in completing their schedules and lists.").

Although the valuation burden is not on Ms. Biggs, she obtained an appraisal showing the Paradise property is worth $52,000 (Ct. Dkt. #64, Exhibit 2, Appraisal by Russell Sunn; Ct. Dkt. #65, Decl. of Appraiser R. Sunn). This is substantially above Debtor's scheduled valuation of $5,000 or $10,000 and indicates equity in the property. Ms. Biggs' also contests Debtor's valuation provided by the Debtor before the last confirmation hearing (Ct. Dkt. #s 72-73). Debtor's evidence consists of inadmissible documents: a letter, comps and documentation from by a real estate broker, as well as notices from a government entity in California. FRE 801 et al.; FRE 901 et al.; FRE 201(b).

The equity in the property should be released through a sale of the property and used to pay Ms. Biggs. Otherwise, Debtor retains his interests in the property without paying Ms. Biggs in full.

**D. Debtor's attempts to avoid his obligations to Ms. Biggs are not done in good faith**

The Bankruptcy Appellate Panel recently affirmed the denial of confirmation in a strikingly similar dispute between former spouses. *Mead v. Loheit (In re Mead)*, Case No. EC-09-1241-MkHDu, 2010 WL 6259982 (BAP 9th Cir. June 15, 2010) (mem., not for publication). Although the BAP's decision was not precedential, it does identify the control legal authorities. It also constitutes a persuasive decision with its application of the legal standards to prevent a debtor from using the bankruptcy court to avoid obligations owed to a former spouse. *See generally* Fed. R. App. P. 32.1; 9th Cir. BAP Rule 8013-1.

The opinion begins: "Debtor and appellant Robert Mead engaged in a long-running and unsuccessful battle in state court with his former spouse." *Id.* at *1 (parenthetical omitted). "When he exhausted his state court options, Mead filed a chapter 13 bankruptcy petition and plan, listing [his former wife] as his only unsecured creditor and proposing to pay her a 4% dividend on her claim." *Id.*

This is not far from the facts at hand—and the panel's holdings make clear the differences between *Mead* and this case are immaterial. Although Debtor Mr. Biggs scheduled two unsecured credit card debts, the panel noted that the addition of routine credit card debt would not alter its evaluation of good faith. *Id.* at *7 n.6. The bankruptcy court also properly disregarded the fact that the debtor had two secured mortgage creditors, noting that debtor's plan would not impair or otherwise affect their rights since he sought to continue to pay them directly. *Id.* at *2. Thus, although Debtor Mr. Biggs has scheduled two secured creditors against their former Marital Residence and his second home, the lenders' interests are immaterial since his plan proposed to pay them directly under the contract terms of their mortgages. The fact that Mr. Biggs does not appear to pay his secured creditors under his new plan does not change the evaluation.

After considering the contentious legal history between Debtor and his former spouse over his obligations to her, the bankruptcy court "found that Mead had not established that he had proposed his plan in good faith. After considering the overall effect of the plan and the litigation history

between the parties, the court found that the sole purpose of the plan was to circumvent the state court's division of the parties' property." *Id.* at *3.

On appeal, the panel noted the bankruptcy court's independent duty to assess whether debtor proposed his plan in good faith under 11 U.S.C. § 1325(a)(3). *Id.* at *5, *citing in part Villanueva v. Dowell (In re Villaneuva)*, 274 B.R. 836, 841 (BAP 9th Cir. 2002). The panel also noted that the debtor "bore the burden of proof to establish by a preponderance of the evidence that his plan was proposed in food faith, and thus had every incentive to submit evidence to establish his good faith." *Id., citing Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443-43 (9th Cir. 1986). The panel also held that the proper test to evaluate good faith is under the "totality of the circumstances." *Id.* at *6, *citing in part Goeb v. Held (In re Goeb)*, 675 F.2d 1386 (9th Cir. 1982). "[T]he good faith issue should, in essence, ask whether the debtor acted equitably in proposing a plan." *Id.* at *5, *citing Goeb*, 675 F.2d at 1390.

In affirming the bankruptcy court, the panel held that "The entirety of the record established that the only effect of Mead's proposed plan was to improperly deprive [his former spouse] of the rights conferred to her under state law." *Id.* at *6. "[I]f one considers the debtor's intent (as can be inferred from his conduct), and the legal effect of his proposed plan, the bankruptcy court could not reasonably have concluded that either Mead's intent or his proposed plan were consistent with the spirit and purposed of chapter 13." *Id.*

The current case involves the same issues at play in *Mead*. Debtor in the case at hand has engaged in an ongoing legal dispute with his former wife in courts in Nevada and Australia over the last six years. Six months after losing before Judge Peck, Debtor filed his petition in bankruptcy court to wipe out his obligations to her. Debtor has almost no other obligations than those owed to Ms. Biggs. *Compare In re Furlong*, 426 B.R. 303, 310 (Bankr. C.D. Ill. 2010) (discounting objection from former spouse who only held 10 percent of unsecured claims). Rather than pay Ms. Biggs, Debtor has spent money on this bankruptcy in hopes of discharging most of his debt to her.

### V.  CONCLUSION

This is not a proper bankruptcy.  Debtor has acted in bad faith in filing his petition and plan, and the plan is not in the best interests of his largest creditor, Ms. Biggs.  Ms. Biggs objects to the confirmation of Debtor's proposed plan.

DATED this 2d day of March, 2012.  ARMSTRONG TEASDALE LLP

By: //s// Louis M. Bubala III
LOUIS M. BUBALA, ESQ.

Counsel for Sheelagh Dawn Biggs

# **CERTIFICATE OF SERVICE**

1. On March 2, 2012, I served the following document(s):

**OBJECTION TO AMENDED PLAN AND JOINDER IN OBJECTION OF CHAPTER 13 TRUSTEE, WITH CERTIFICATE OF SERVICE**

2. I served the above-named document(s) by the following means to the persons as listed below:

    **X**  a.  **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

KEVIN A. DARBY on behalf of Debtor JOEL BIGGS
kevin@darbylawpractice.com,
tricia@darbylawpractice.com;tyler@darbylawpractice.com;alyssa@darbylawpractice.com;kendal@darbylawpractice.com;beth@darbylawpractice.com;itati@darbylawpractice.com

TRICIA M. DARBY on behalf of Debtor JOEL BIGGS
tricia@darbylawpractice.com, kevin@darbylawpractice.com

WILLIAM A. VAN METER
c13ecf@nvbell.net, wvanmeter13@ecf.epiqsystems.com

    ☐  b.  **United States mail, postage fully prepaid** (list persons and addresses):

    ☐  c.  **Personal Service** (list persons and addresses)

    I personally delivered the document(s) to the persons at these addresses:

    ☐  d.  **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

    ☐  e.  **By fax transmission** (list persons and fax numbers):

    ☐  f.  **By messenger**:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 2d day of March, 2012.

|    L. Bubala    |    /s/ L. Bubala    |
|---|---|
| Name | Signature |